Filing # 146734738 E-Filed 03/30/2022 03:31:42 PM

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

CASE NO.:

CAIN & BULTMAN, INC., a Florida
corporation,

    Plaintiff,

v.

EVOLUTIONS FLOORING, INC., a California
corporation; WILLIAM M. BIRD & CO., a South
Carolina corporation; and TOMMY HOOKER, an
individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Cain & Bultman, Inc. ("CB" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendants Evolutions Flooring, Inc. ("Evolutions"), William M. Bird & Co. ("William Bird"), and Tommy Hooker ("Mr. Hooker") (collectively, "Defendants") and states as follows:

### JURISDICTION, VENUE, AND PARTIES

1.    This Court has jurisdiction over this lawsuit in that Plaintiff asserts causes of action in excess of $30,000, exclusive of interest, attorneys' fees, and costs.

2.    Plaintiff, CB, is a Florida corporation with its principal place of business in Jacksonville, Florida.

3.    Defendant, Evolutions, is a California corporation with its principal place of business in San Francisco, California.

4. Defendant, William Bird, is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

5. Mr. Hooker is an individual who resides in the state of North Carolina and is a current employee of Evolutions.

6. Venue is appropriate in Duval County, Florida pursuant to sections 47.041 and 47.051, Florida Statutes, because one or more of the causes of action set forth herein accrued in Duval County, Florida.

7. This Court has jurisdiction over Evolutions pursuant to section 48.193(1)(a) because, among other things, (1) the causes of actions set forth herein arise from Evolutions operating and conducting business in Florida, (2) Evolutions undertook a course of conduct to tortiously interfere with business relationships in Florida, and (3) Evolutions breached a contract by failing to perform acts which were required to be performed in Florida.

8. This Court has jurisdiction over William Bird pursuant to section 48.193(1)(a) and 48.193(2), Florida Statutes, because, among other things, (1) the causes of actions set forth herein arise from William Bird operating and conducting business in Florida, (2) William Bird undertook a course of conduct to tortiously interfere with business relationships in Florida, and (3) William Bird is engaged in substantial and ongoing business activity within Florida, and maintains an office in Florida.

9. This Court has jurisdiction over Mr. Hooker because he purposefully undertook a course of conduct to tortiously interfere with business relationships in Florida.

10. All conditions precedent to bringing the causes of action alleged herein have occurred, have been satisfied, or have been waived.

## GENERAL ALLEGATIONS

11. CB is a third generation family business which has for over 87 years primarily operated as a wholesale and commercial distributor of carpeting and wood flooring which provides sales, marketing, and logistical services for flooring industries and manufacturers. During the course of its history, CB has established an extensive network of dealers and commercial accounts throughout its primary markets in Florida and Georgia.

12. Evolutions is an importer and supplier of flooring products. For over thirteen (13) years, CB has been a regular customer of Evolutions and its predecessor, Struxtur, Inc. In those thirteen years, CB has, among other things: (1) shared ideas and market-specific information with Evolutions to support new product introductions (2) created and launched an entire product line of Evolutions manufactured products to its customers, thereby investing millions of dollars in marketing expenses, merchandising displays, and sample packages to deliver Evolutions' products in CB's primary markets in Florida and Georgia; (3) consistently maintained millions of dollars of inventory each month; (4) invested hundreds of thousands of dollars in marketing materials for POS and customer brochures for Evolutions products; (5) educated retail store owners, managers, and salespersons in CB's territory on Evolutions products, and (6) sold over $70 million of Evolutions' products to CB's customers over the term of the parties' relationship.

13. During this thirteen year business relationship, CB would purchase product from Evolutions by placing a purchase order via email. Evolutions would confirm the purchase by sending a weekly updated spreadsheet to CB outlining the status of all of CB's open orders. Through December 2021,[1] CB timely paid every invoice as agreed by the parties.

---

[1] CB has withheld payment on certain products since December 2021 as outlined more fully below in Count VIII for Declaratory Judgment.

14. Throughout the course of the parties' relationship, but particularly beginning in 2017, Evolutions urged CB to continue expanding Evolutions products throughout CB's markets in Florida and Georgia.

15. Specifically, in 2019, Evolutions' National Manager, Larry Allen ("Mr. Allen"), discussed a second private label line with CB's president and CEO, Kirk Sandifer ("Mr. Sandifer"). Mr. Allen and Mr. Sandifer anticipated that the second private label would require CB to more than double the number of salespersons selling the Evolutions wood products. In reliance on Mr. Allen's promise to supply CB with the product to meet the anticipated demand, CB did in fact appoint eight (8) additional sales representatives to market Evolutions Products. This more than doubled CB's purchases from Evolutions.

16. In furtherance of this second private label, Mr. Allen met with CB's team at their home office in Jacksonville, Florida to present to them 50 plus individual samples to select for their new line, Signature Series by Norwood Hill ("SS"). Out of those samples, CB selected 27 Sku's for the SS and 12 for the existing line of Norwood Hill. A total of 39 Sku's were selected, purchased, and sampled, all at CB's direction based upon its intimate knowledge of the dealers and customers in the Florida and Georgia markets. CB invested over $440,000 in samples and merchandising racks alone, on top of millions of dollars of inventory to support this launch.

17. Based upon the assurances of Mr. Allen and other executives at Evolutions, CB launched its second private label of Evolutions products in February 2020. By the end of 2020, CB had the highest sales of Evolutions products than any prior year in the parties' relationship, selling $5.8 million of Evolutions products.

18. Throughout the majority of the relationship with Evolutions, CB would receive product approximately three to four months from the date of the purchase order. Based on the

4

parties' course of dealing relating to product deliveries, CB routinely accepted product orders from its customers and promised timely delivery of product in anticipation of Evolutions continuing to perform and deliver product to CB's warehouse in Jacksonville within the 90–120 day period following Evolutions' acceptance of CB's purchase orders.

19. In March 2021, CB began experiencing delays in receiving Evolutions products. Contrary to the parties' course of dealing, products began to take six months or longer to arrive.

20. Despite this delay, CB doubled its sales of Evolutions products in the year 2021, with $10.6 million in sales of Evolutions products.

21. However, Evolutions continued to make delayed deliveries of its product through the year 2021. There are certain products for which CB placed purchase orders, dating as far back as March 2021, which CB still has not received as of the date of filing this Complaint. A spreadsheet outlining the status of CB's open orders with Evolutions is attached as **Exhibit A**.

22. William Bird is a distributor of flooring products with a primary market in the southeastern United States.

23. William Bird is a customer of Evolutions, and distributes Evolutions products throughout its primary market in the southeast.

24. Upon information and belief, beginning in mid-2021, Evolutions and William Bird began discussing a plan to supplant CB with William Bird in CB's primary markets of Florida and Georgia.

25. Accordingly, in mid-2021, Evolutions began to equip William Bird with inventory, samples, and merchandising for product normally sold by CB. Many of the products provided to William Bird are the <u>same products</u> that Evolutions failed to deliver, or deliver timely, to CB in the year 2021.

26. Upon information and belief, Evolutions further provided William Bird with CB product sales information—obtained from CB over the course of the parties' relationship—so as to guide William Bird as to which products to bring in to meet the demands of CB's customers.

27. In December 2021, William Bird launched its own line of Evolutions products. Several products in the William Bird product log consisted of CB's best-selling Evolutions products.

28. On December 28, 2021, the president and CEO of Evolutions, Jim Chian ("Mr. Chian"), emailed Mr. Sandifer to confirm that Evolutions would be terminating its relationship with CB effective March 1, 2022, ostensibly due to "supply capacity" issues. Evolutions provided CB with roughly sixty (60) days' notice of its intent to terminate the relationship after thirteen years of ongoing business between the parties and after CB doubled its sales of Evolutions products in the year 2021. A true and correct copy of this email is attached as **Exhibit B**.

29. Also in December 2021, the divisional manager of Evolutions, Mr. Hooker, began traveling with William Bird representatives to displaying dealers selling CB's products in Florida and Georgia.

30. Mr. Hooker and the William Bird representatives informed these displaying dealers that they would no longer be able to obtain certain Evolutions products—namely Norwood Hill—from CB, and that they would need to replace the Norwood Hill samples from CB with samples of a comparable Evolutions product: Palmetto Road sold by William Bird. Mr. Hooker and the William Bird representatives further informed these displaying dealers that CB would no longer be able to provide product, and that the dealers should source all inventory going forward with William Bird.

31. Although some of Evolutions products have not been delivered, or delivered timely, CB currently has millions of dollars in inventory of Evolutions products in stock.

### COUNT I: PROMISSORY ESTOPPEL – EVOLUTIONS

32. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

33. Evolutions consistently represented to CB that the parties would have a long and mutually beneficial business relationship. Throughout the course of the parties' relationship, Evolutions urged CB to continue expanding Evolutions products in CB's markets. Evolutions further encourage CB to launch a private label line of Evolutions products with the assurance that Evolutions would continue to supply CB with the products for this line.

34. CB reasonably relied on these assurances of a continued business relationship based on the parties' thirteen years of history and CB's increasing sales of Evolutions products.

35. Evolutions' representations induced CB to, among other things, (1) appoint eight additional sales representatives to market Evolutions products among its customers and accounts, (2) invest over $440,000 in samples and merchandising racks for the private line of Evolutions products, and (3) invest millions of dollars in inventory to support the launch of the private line.

36. Evolutions actually knew that its assurances of a continued business relationship, in addition to its urging CB to create a private label line, caused CB to make the above investments and to double its purchases of Evolutions products.

37. With only 60 days' notice, Evolutions terminated its relationship with CB and has refused to continue supplying product, in breach of the promises that Evolutions had made to CB with regard to the parties maintaining a long-term and mutually beneficial supply relationship. In fact, the 60 days' notice of termination was done specifically for the purpose of harming CB's relationships with its customers so as to specifically enable William Bird to pirate the business

from CB. As a result, CB has been damaged by, among other things, loss of the substantial investment made in merchandising Evolutions products, loss of current customers and corresponding revenue, and loss of potential business opportunities.

WHEREFORE, CB respectfully requests a judgment against Evolutions for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT II: TORTIOUS INTERFERENCE – EVOLUTIONS AND MR. HOOKER

38. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

39. CB has ongoing business relationships with numerous dealers, retail customers, and commercial accounts throughout Florida and Georgia.

40. Evolutions has an intimate knowledge of CB's customer base, as CB consistently provided Evolutions with product sales information in order to mutually develop growing business and CB's own private label line.

41. Evolutions' divisional manager, Mr. Hooker, has traveled throughout Florida and Georgia and has informed CB's customers that CB will no longer be able to provide Evolutions products, that the dealers should source all inventory going forward with William Bird, and in certain instances, informed CB's customers that CB was "going out of business."

42. Evolutions and Mr. Hooker further informed CB's customers that they should discard CB's display samples and replace them with samples of products sold by William Bird. More recently, William Bird's representatives have caused CB's samples to be altered to include William Bird's sku numbers and other identifying information so as to misappropriate the sales that CB would have received from the substantial investment CB made in purchasing from Evolutions the samples.

43. Evolutions and Mr. Hooker intentionally misappropriated the growing business with such customers away from CB for the benefit of William Bird.

44. As a result of Evolutions' and Mr. Hooker's tortious interference, CB has suffered substantial damages including, without limitation, loss of current customers and corresponding revenue, loss of potential business opportunities, diminished ability to sell the millions of dollars in inventory of Evolutions' products that CB currently has in stock and corresponding loss of revenue, and damage to CB's reputation with its customers.

WHEREFORE, CB respectfully requests a judgment against Evolutions for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

### COUNT III: TORTIOUS INTERFERENCE WITH SUPPLY RELATIONSHIP– WILLIAM BIRD

45. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

46. CB has had an ongoing and mutually beneficial business relationship with Evolutions for approximately thirteen years.

47. William Bird had knowledge of CB's relationship with Evolutions by virtue of its own relationship with Evolutions and its solicitation of CB's current customer base.

48. William Bird intentionally and unjustifiably interfered with CB's relationship with Evolutions by inducing Evolutions to abandon its business relationship with CB in favor of William Bird.

49. As a result of William Bird's tortious interference, CB has suffered substantial damages including, without limitation, loss of customers and corresponding revenue and loss of the substantial investment made in merchandising Evolutions products.

WHEREFORE, CB respectfully requests a judgment against William Bird for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT IV: TORTIOUS INTERFERENCE WITH CUSTOMER RELATIONSHIPS–WILLIAM BIRD

50. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

51. CB has ongoing business relationships with several retail customers and commercial accounts throughout Florida and Georgia.

52. William Bird had knowledge of CB's customer relationships by virtue of its relationship with Evolutions and desire to expand its own business in CB's primary market of Florida and Georgia.

53. Representatives from William Bird have traveled throughout Florida and Georgia and have informed CB's customers that CB will no longer be able to provide Evolutions products, and that the dealers should source all inventory going forward with William Bird.

54. These William Bird representatives further informed CB's customers that they should discard CB's display samples and replace them with samples of products sold by William Bird. More recently, William Bird's representatives have caused CB's samples to be altered to include William Bird's sku numbers and other identifying information so as to misappropriate the sales that CB would have received from the substantial investment CB made in purchasing from Evolutions the samples.

55. William Bird intentionally and unjustifiably interfered with CB's customers by falsely claiming that CB will no longer be able to supply Evolutions products and soliciting CB's customers to become customers of William Bird instead.

.

56. As a result of William Bird's tortious interference, CB has suffered substantial damages including, without limitation, loss of current customers and corresponding revenue, loss of potential business opportunities, diminished ability to sell the millions of dollars in inventory of Evolutions' products that CB currently has in stock and corresponding loss of revenue, and damage to CB's reputation with its customers.

WHEREFORE, CB respectfully requests a judgment against William Bird for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT V: TRADE LIBEL – MR. HOOKER

57. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

58. Mr. Hooker falsely told CB's customers that CB would no longer be able to provide Evolutions products when, in fact, CB was receiving continued shipments of Evolutions product and presently has millions of dollars of Evolutions product inventory in stock.

59. Mr. Hooker knew or reasonably should have known that the statement would result in CB's customers not placing orders with CB and, in fact, redirected CB's customers to William Bird in order to obtain Evolutions products.

60. As a direct result of this false statement, CB's customers were induced not to purchase Evolutions products from CB.

61. CB has lost business with customers that would typically buy Evolutions products from CB and, specifically, has incurred damages from being unable to sell the millions of dollars Evolutions products it currently has in stock.

WHEREFORE, CB respectfully requests a judgment against Mr. Hooker for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT VI: CIVIL CONSPIRACY – EVOLUTIONS, WILLIAM BIRD, AND MR. HOOKER

62. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

63. Evolutions, William Bird, and Mr. Hooker agreed to unlawful acts and/or to do lawful acts by unlawful means, including, among other things: (1) misappropriating CB's growing business away from CB for the benefit of William Bird; (2) continuing to accept orders well after Evolutions knew it would be terminating CB, then executing such termination with little notice, to ensure that CB would not have time and opportunity to compete with comparable non-Evolutions products in the relevant market; (3) misusing proprietary market and product sales information shared with Evolutions for the strict purpose of developing CB's relationship with Evolutions in order to perpetuate William Bird's business in the relevant market; and (4) misappropriating investments made by CB to expand sales of Evolutions products in the Florida and Georgia markets for the benefit of William Bird.

64. In pursuance of this conspiracy, Evolutions, William Bird, and Mr. Hooker have taken the following actions, among others:

   a. Evolutions has falsely claimed an inability to have CB's top-selling products manufactured by its suppliers while providing those same products to William Bird;

   b. Evolutions has furnished William Bird with CB product sales and market information in order to guide William Bird as to which Evolutions products to bring in to the meet the demands of CB's customers;

    c.    Evolutions continued to accept orders from CB after it knew that it would terminate the relationship with CB, but before providing CB with notice of such intent to terminate;

    d.    Evolutions terminated the relationship with CB with inadequate notice for the express purpose of furthering the parties' efforts to harm CB and benefit William Bird in the Florida and Georgia markets;

    e.    Mr. Hooker and representatives of William Bird have traveled throughout CB's primary markets in Florida and Georgia to inform CB's customers that CB will no longer be able to meet their demands since Evolutions will no longer supply CB with product;

    f.    Mr. Hooker and representatives of William Bird have directed CB's customers to destroy and replace CB's samples with William Bird's Palmetto Road samples and direct all future orders to William Bird.

65.    As a result, CB has been damaged by, among other things, loss of the substantial investment made in merchandising Evolutions products, loss of proprietary product sales information, loss of current customers and corresponding revenue, loss of potential business opportunities, diminished ability to sell the millions of dollars in inventory of Evolutions' products that CB currently has in stock and corresponding loss of revenue, and damage to CB's reputation with its customers.

WHEREFORE, CB respectfully requests a judgment against Evolutions, William Bird, and Mr. Hooker for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT VII: BREACH OF CONTRACT – EVOLUTIONS

66. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

67. Throughout the course of the parties' business relationship, CB would purchase product from Evolutions by placing a purchase order via email. Evolutions would confirm and accept the purchase order by sending a weekly updated spreadsheet to CB outlining the status of all of CB's open orders. A spreadsheet outlining the status of CB's open orders with Evolutions is attached as **Exhibit A**.

68. On December 28, 2021, the president and CEO of Evolutions, Mr. Chian, emailed the president and CEO of CB, Mr. Sandifer, to confirm that Evolutions would be terminating its relationship with CB effective March 1, 2022. A true and correct copy of this email is attached as **Exhibit B**.

69. Although Mr. Chian's email expressly recognizes that CB still had a "significant amount of outstanding purchase orders with Evolutions," Mr. Chian also unequivocally stated that Evolutions would not ship any more containers to CB after March 1, 2022.

70. As of the date of the filing of this Complaint, CB still has not received product for purchase orders placed by CB—and accepted by Evolutions—as far back as March 2021. Moreover, it is clear from Mr. Chian's email terminating the relationship between Evolutions and CB that CB will never, in fact, receive such product.

71. CB has suffered substantial damages, including incidental and consequential damages, as a result of this non-delivery and repudiation of the contract for sale.

WHEREFORE, CB respectfully requests a judgment against Evolutions for damages, prejudgment interest, court costs, and any further relief deemed just and proper by the Court.

## COUNT VIII: DECLARATORY JUDGMENT

72. CB re-alleges and incorporates the allegations contained in paragraphs 1 through 31 above.

73. As discussed above, CB timely paid every invoice throughout the course its business relationship with Evolutions, according to the terms agreed upon by the parties.

74. However, upon receiving notice in December 2021 that Evolutions would be terminating its relationship with CB effective March 1, 2022, CB withheld payment on approximately $1.4 million in product it had already received from Evolutions.

75. CB withheld payment on such products already received in order to (1) negotiate continued deliveries from Evolutions on open purchase orders past March 1, 2022, (2) maintain available capital to find reasonable substitute products from other suppliers for those products Evolutions would never deliver, and (3) preserve funds to cover other incidental and consequential damages arising from Evolutions' anticipatory breach of the open order purchase contracts.

76. Upon information and belief, Evolutions contests that CB is entitled to withhold payment for products already received.

77. Accordingly, CB is in doubt about its right to withhold payment for Evolutions products already received based on Evolutions' anticipatory breach of the open order purchase contracts.

WHEREFORE, pursuant to Chapter 86, Florida Statutes, CB requests a declaration from this Court that it is entitled to withhold payment on products Evolutions has already delivered until the resolution of this matter.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 30, 2022.

        **SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Steven E. Brust*
    Steven E. Brust
    Florida Bar No.: 0832091
    sbrust@sgrlaw.com
    asalane@sgrlaw.com
    dhsmith@sgrlaw.com
    Jessica J. Williams
    Florida Bar No. 1026127
    jwilliams@sgrlaw.com
    asalane@sgrlaw.com
    50 N. Laura Street, Suite 2600
    Jacksonville, Florida 32202
    Tel: (904) 598-6100
    Fax: (904) 598-6300
    *Attorneys for Plaintiff*